**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF UTAH**

| | |
|---|---|
| **UNITED STATES OF AMERICA,** Plaintiff, vs. **CARLOS ZUNIGA-HERNANDEZ**, Defendant. | **MEMORANDUM DECISION AND ORDER GRANTING MOTION TO DISMISS COUNT III OF THE INDICTMENT** **Case No. 1:18-cr-53** **Judge Clark Waddoups** |

Before the court is Defendant Carlos Zuniga-Hernandez's Motion to Dismiss Count III of the Indictment (ECF No. 21). The motion has been fully briefed, and the court heard argument on the same on February 8, 2019. Having reviewed the pleadings and materials submitted and considered the arguments of counsel, the court now enters this order **GRANTING** Defendant's motion to dismiss.

## BACKGROUND

By a three-count indictment filed June 13, 2018, Defendant was charged with possession of heroin with intent to distribute, possession of cocaine with intent to distribute, and reentry of a previously removed alien. (ECF No. 1.) Defendant's motion to dismiss only attacks the charge of illegal reentry, which alleges that "[o]n or about March 29, 2018 in the Northern Division of the District of Utah, the defendant herein, an alien who on or about March 18, 2012, was excluded, removed, and deported from the United States, did knowingly reenter and was found in the United States in the District of Utah, having not obtained the consent of the Secretary of the United States Department of Homeland Security to reapply for admission into the United States; all in violation of 8 U.S.C. § 1326, and punishable pursuant to 8 U.S.C. § 1326(b)." *Id.*

On February 11, 2009, Defendant was served with a notice to appear for removal proceedings that did not contain the time and place of his removal hearing. (ECF No. 21-1.) On that same day, he signed a notice of rights and request for disposition in which he acknowledged that he was in the United States illegally, waived his rights to a hearing before the immigration court, expressed his desire to return to his country, and waived his rights to appeal his removal. (ECF No. 22-2.) An immigration judge signed an order of removal on February 20, 2009 (the "Removal Order"), and Defendant was removed from the United States on or about March 5, 2009. (ECF No. 21-3.) Thereafter, Defendant reentered the United States, and his order of removal was reinstated on March 8, 2012. On or about March 29, 2018, Defendant was again found in the United States, giving rise to the current illegal reentry charge. Defendant now moves to dismiss that charge, arguing that because the notice to appear he received on February 11, 2009, did not contain the time and date of his removal proceeding, it was deficient and therefore never vested the immigration court with jurisdiction over him, and as such, that court's order of removal was void and cannot serve as the basis for his current charge of illegal reentry.

**ANALYSIS**

Defendant asks the court to dismiss Count III of the indictment against him, which alleges that Defendant illegally re-entered the United States after he had been previously removed, in violation of 8 U.S.C. § 1326. (*See* ECF No. 1.) In order to prove that Defendant is guilty of this offense, the government must prove 1) that Defendant had been previously deported or removed and 2) that he was found in the United States without consent. *See* 8 U.S.C. § 1326(a). Defendant, relying on the Supreme Court's recent ruling in *Pereira v. Sessions*, 138 S.Ct. 2105 (2018), asserts that because the notice to appear he received on February 11, 2009 did not state the place and time for his removal proceedings, it was defective. He therefore asserts

that the immigration court was not vested with jurisdiction over him and that the immigration court's Removal Order is therefore void and cannot, as a matter of law, be used to prove that he was previously removed in order to satisfy the first element of Count III.

The Tenth Circuit has recognized that district courts may, in "'limited circumstances,'" dismiss charges at the pretrial stage if it determines that "'*as a matter of law,* the government is incapable of proving its case beyond a reasonable doubt.'" *United States v. Todd*, 446 F.3d 1062, 1068 (10th Cir. 2006) (quoting *United States v. Hall*, 20 F.3d 1084, 1088 (10th Cir. 1994) (emphasis in original)). Such a dismissal is a "'rare exception'" and can only be made if the "undisputed evidence shows that, as a matter of law, the Defendant could not have committed the offense for which he was indicted." *Id.* (quoting *Hall*, 20 F.3d at 1088)). The court finds that Defendant's case constitutes such a rare exception.

### A. The notice to appear that Defendant received was not a notice to appear under 8 USC § 1229(a).

Removal proceedings against an alien are initiated when he or she is served with a notice to appear. Under 8 U.S.C. § 1229(a), that notice to appear is required to specify, among other things, "[t]he time and place at which the proceedings will be held." The notice to appear that Defendant received on February 11, 2009 did not contain that required information. Rather, Defendant's notice to appear simply stated that his proceeding would occur "on a date to be set" and "at a time to be set." (ECF No. 21-1.) The notice to appear that Defendant received clearly did not comply with 8 U.S.C. § 1229(a).

In *Pereira v. Sessions*, 138 S.Ct. 2105 (2018), the Supreme Court was presented with a nearly identical factual situation but was ultimately asked to resolve a slightly different question than that which Defendant raises here. Mr. Pereira was a Brazilian citizen living in the United States on an expired visa. *Id.* at 2112. Following a 2006 arrest, he was served with a notice to

appear that, instead of providing the date and time of his removal proceeding, stated that his hearing would be held "at a date and time to be set in the future." *Id.* Removal proceedings were subsequently initiated against him in 2013, and Mr. Pereira moved to cancel his removal under 8 U.S.C. § 1229b(b)(1)(A) because he had been continuously present in the United States for more than ten years. *Id.* In support of this argument, he asserted that the stop-time rule, which states that a period of continuous residence ends when an alien is served with a notice to appear, was not triggered because the notice he received did not contain information required by 8 U.S.C. § 1229(a)(1) and was therefore invalid. *Id.* Thus, the court was asked whether "a 'notice to appear' that does not specify the 'time and place at which the proceedings will be held,' as required by § 1229(a)(1)(G)(i), trigger[s] the stop-time rule." *Id.* at 2113. The Court answered this question in the negative, ruling that "[a] *putative notice* to appear that fails to designate the specific time or place of the noncitizen's removal proceedings is not a 'notice to appear under section 1229(a),' and so does not trigger the stop-time rule." *Id.* at 2114 (emphasis added).

Although the question before the Supreme Court was "narrow," logic precludes limiting the Court's ultimate holding to apply only to the triggering of the stop time rule. The Court's recognition that a notice to appear that fails to include statutorily-required information is "not a 'notice to appear under section 1229(a)'" should govern any instance or application where a notice to appear under section 1229(a) is required. Indeed, there is nothing about the Court's statement that "[i]f the three words 'notice to appear' mean anything in this context, they must mean that, at a minimum, the Government has to provide noncitizens 'notice' of the information, *i.e.,* the 'time' and 'place,' that would enable them 'to appear' at the removal hearing in the first place," that suggests that proper notice is only required in order to trigger the stop time rule.

4

Although the question before the Court in *Pereira* was narrow, the declarations, and ultimate holding, of the Court were not. Under *Pereira*, a notice to appear that does not include the date and time of the alien's removal proceeding is not an effective notice to appear under 1229(a). Defendant therefore never received a notice to appear as was required under 8 U.S.C. § 1229(a).[1]

### B. Because Defendant was not served with a valid notice to appear, the immigration court was never vested with subject matter jurisdiction over him.

Defendant asserts that because he was not served with a notice to appear that complied with 8 U.S.C. § 1229(a), the immigration court was never vested with jurisdiction over him. Under 8 C.F.R. § 1003.14, "[j]urisdition vests, and proceedings before an Immigration Judge commence, when a charging document is filed with the Immigration Court." Before the court can determine whether the immigration court had jurisdiction over Defendant, it must answer two questions—what is the nature of the jurisdiction vested in immigration courts and what constitutes a charging document under 8 C.F.R. § 1003.14?

As the District Court for the District of New Mexico recently recognized, "[t]here appears to be confusion about whether 'jurisdiction' in 8 C.F.R. § 1003.14 refers to personal

---

[1] The court is aware that courts within this Circuit, and even this District, have refused to extend *Pereira's* application beyond the stop-time rule. *See, e.g., United States v. Cardenas-Rodriguez*, No. 18-10104-EFM-1, 2019 WL 1058197, at *4 (D. Kan. Mar. 6, 2019) (finding that petitioner's attempts to apply *Pereira* beyond the stop-time rule "conflicts with the plain language of the Supreme Court's decision, which explicitly stated that the question before it was a 'narrow' one"); *United States v. Ruiz-Gomez*, No. 19-CR-416-WJ, 2019 WL 1767402, at *4 (D.N.M. Apr. 22, 2019) ("*Pereira's* ruling was narrow and only concerns a removable alien's eligibility for cancellation of removal (a form of discretionary relief)"); *United States v. Lorenzo-Valmaceda*, No. 4:18-CR-00017-DN, 2019 WL 630325, at *2 (D. Utah Feb. 13, 2019). The Tenth Circuit has yet to provide guidance on this issue. While in its recent unpublished opinion, *Soriano-Mendosa v. Barr*, No. 18-9535, 2019 WL 1531499 (10th Cir. Apr. 9, 2019), the court appeared to take a skeptical view on extending *Pereira*, it did not directly address the issue, and its ruling was not based on an analysis of *Pereira*. Rather, it briefly noted that because petitioner had subsequently "received notices of hearing that designated the dates and times of his removal proceedings," it saw "no jurisdictional significance in the failure to include a date and time in the notice to appear." *Id.* at *4. The court cited the Board of Immigration Appeals's explanation that "'a notice to appear that does not specify the time and place of an alien's initial removal hearing vests an Immigration Judge with jurisdiction over the removal proceedings . . . so long as a notice of hearing specifying this information is later sent to the alien.'" *Id.* (quoting *In re Bermudez-Cota*, 27 I. & N. Dec. 441, 447 (BIA 2018).) Here, Defendant did not receive a subsequent notice of hearing "that designated the dates and times of his removal proceedings."

jurisdiction, subject-matter jurisdiction, or both." *Alderete-Lopez v. Whitiker*, No. CV 18-1114, 2018 WL 6338420, at *12, n. 10 (D.N.M. Dec. 5, 2018). That court ultimately found that "[t]aken together, the statutory and regulatory scheme seeks to regulate which tribunal has adjudicatory authority over applications to adjust status in different circumstances" and therefore "regulate the immigration court's, and other tribunals'—like the federal courts'—subject-matter jurisdiction." *Id.* This court agrees with this determination.

"Subject matter jurisdiction is the legal authority of a court to hear and decide a particular type of case." Erwin Chemerinsky, Federal Jurisdiction 285 (7th ed. 2016); *see also Jurisdiction*, Black's Law Dictionary (10th ed. 2014) (defining subject matter jurisdiction as relating to a court's jurisdiction "over the nature of the case and the type of relief sought"). Personal jurisdiction, however, concerns a court's "power to bring a person into its adjudicative process." *See id.* The jurisdiction granted by 8 C.F.R. § 1003.14 addresses when the court can hear and decide (or as stated in 8 C.F.R. § 1003.14, "commence") a particular type of case; it is not concerned with how the court can bring an alien before it. As such, 8 C.F.R. § 1003.14 refers to subject matter, and not personal, jurisdiction. *See* Kit Johnson, *Pereira v. Sessions: A Jurisdictional Surprise for Immigration Courts*, 50 COLUM. HUM. RIGHTS L. REV. (2018), available at https://ssrn.com/abstract=3211334 (recognizing that 8 C.F.R. § 1003.14(a) addresses the "conceptual domain of subject-matter jurisdiction," as it "concerns whether a particular case is properly before an immigration court").

As to the second question raised by 8 C.F.R. § 1003.14, a "charging document" is defined as "the written instrument which initiates a proceeding before an Immigration Judge" and includes "a Notice to Appear." 8 C.F.R. § 1003.13. While the requirements for what a notice to appear must contain were clearly set forth by Congress in 8 U.S.C. § 1229(a)(1), 8 C.F.R. §

1003.15(b) purports to offer less stringent requirements, specifically omitting the requirement that the notice to appear include the "time and place at which the proceedings will be held." *Compare* 8 U.S.C. § 1229(a)(1)(G)(i) *with* 8 C.F.R. § 1003.15(b). To further muddy the waters, 8 C.F.R. § 1003.18(b) provides that a notice to appear must include "the time, place and date of the initial removal hearing, *where practicable*" and that if "that information is not contained in the Notice to Appear, the Immigration Court shall be responsible for scheduling the initial removal hearing and providing notice to the government and the alien of the time, place, and date of hearing." *Id.* (emphasis added).

The Supreme Court has long held that "it will not permit the practice of an executive department to defeat the obvious purpose of a statute." *Webster v. Luther*, 163 U.S. 331, 342 (1896). The purpose of 8 U.S.C. § 1229(a)(1) is to provide the specific information that must be contained in a notice to appear, and regulations cannot be issued to defeat that purpose. As such, the provisions of 8 C.F.R. §§ 1003.15 and 1003.18 that allow a notice to appear to omit, or only provide if practicable, the time and place of an alien's removal proceeding are invalid. *See United States v. Chavez-Flores*, 365 F. Supp. 3d 782, 788 (W.D. Tex. 2019) ("Section 1229 is unambiguous. 8 C.F.R. § 1003.15 and § 1003.18 directly conflict with Section 1229's clear requirements. As a regulation may not claim authority whilst "defeating the obvious purpose of a statute[,]" an NTA not containing the time and place of the removal hearing is facially deficient." (quoting *Webster*, 163 U.S. at 342)).

Analyzing these regulations under a *Chevron* analysis reaches the same result. "When a court reviews an agency's construction of the statute which it administers, it is confronted with two questions. First, always, is the question whether Congress has directly spoken to the precise question at issue. If the intent of Congress is clear, that is the end of the matter; for the court, as

7

well as the agency, must give effect to the unambiguously expressed intent of Congress." *Chevron, U.S.A., Inc. v. Nat. Res. Def. Council, Inc.*, 467 U.S. 837, 842–43 (1984). By passing 8 U.S.C. § 1229(a)(1), Congress directly spoke to what must be included in a notice to appear, which is "the precise question" that is at issue in 8 C.F.R. §§ 1003.15 and 1003.18. Congress clearly intended for a notice to appear to include, and give an alien notice of, the time and place that an alien's removal proceeding would take place. As such, "that is the end of the matter," and the Department of Justice had no authority to issue regulations that contradict, or diminish, the plan language and intent of 8 U.S.C. § 1229(a)(1). *Id.*

Thus, under a plain reading of 8 C.F.R. § 1003.13, 8 C.F.R. § 1003.14, and 8 U.S.C. § 1229(a), a notice to appear that provides the date and time of an alien's removal proceeding is required in order to vest an immigration court with subject matter jurisdiction over that alien. Because the notice to appear that Defendant received in this case did not contain this information, and was therefore "not a 'notice to appear under section 1229(a),'" the immigration court was never vested with subject matter jurisdiction over him. *See Pereira*, 138 S.Ct. at 2115.

The government argues that the court only needs to look to the regulations here, as they alone vest an immigration court with jurisdiction. Specifically, it asserts that 8 C.F.R. § 1003.14 provides that jurisdiction vests when a charging document is filed, that 8 C.F.R. § 1003.13 states that a notice to appear constitutes such a charging document, and 8 C.F.R. § 1003.15 provides the requirements that a notice to appear must include. The government's position is therefore that these regulations create a closed loop that fully covers what must occur for an immigration court to be vested with jurisdiction, and because none of these regulations cross reference 8 USC § 1229(a)(1), that the statute's definition of a notice to appear is irrelevant to jurisdiction. This argument ignores *Chevron* and the long-standing recognition that a regulation cannot

"defeat the obvious purpose of a statute." *Webster*, 163 U.S. at 342. The purpose of 8 USC § 1229, as is clearly expressed in the title of the section, is to set provide what is required in order a trigger the "initiation of removal proceedings." This is the same purpose that 8 C.F.R. § 1003.14 (and by incorporation the definitions contained in 8 C.F.R. § 1003.13 that apply to it) purports to serve, as it is titled "jurisdiction and commencement of proceedings." Because the regulations attempt to occupy the same space that is already taken by 8 USC § 1229(a)(1), "that is the end of the matter." *Chevron, U.S.A., Inc.* 467 U.S. at 842–43. The statute provides clear requirements for what the government must include in a notice to appear, and those requirements cannot be minimized or avoided through regulations that contain less stringent requirements.

The government thus tries to distinguish the purposes of 8 USC § 1229(a)(1) and 8 C.F.R. § 1003.14 by arguing that § 1229(a)(1) refers only to what information must be included in the notice to appear that is served on the alien, while the regulations concern what must be in the notice that is filed with the court. This is a difference without distinction, as both laws serve the identical purpose of setting forth the requirements that must be met in order for removal proceedings to commence. As such, the requirements of 8 USC § 1229(a)(1) control, and the government cannot adopt lesser requirements through regulation. Moreover, the government's argument ignores the fact that the notice to appear that was served on Defendant here was the same document that was filed with the immigration court in an attempt to vest the court with subject matter jurisdiction over Defendant. (*See* ECF No. 22, at 2.) The same was true of the notice to appear at issue in *Pereira*. *See Pereira*, 138 S.Ct. at 2112. The requirements of 8 USC § 1229(a)(1) control what must be contained in a notice to appear, regardless of whether it is served on the alien or filed with the immigration court. The notice to appear that Defendant received did not contain the information required under 8 USC § 1229(a)(1) and did not

therefore vest the immigration court with subject matter jurisdiction over that Defendant.

### C. The immigration court's Removal Order is void.

Because Defendant did not receive a notice to appear under 8 USC § 1229(a), the immigration court was never vested with subject matter jurisdiction over him. The immigration court's Removal Order is therefore void. *U.S. v. Bigford*, 365 F.3d 859, 864–65 (10th Cir. 2004) (recognizing the "longstanding proposition that judgments rendered by a court lacking jurisdiction are void") (*citing Burnham v. Super. Ct. of Cal.*, 495 U.S. 604, 608 (1990); *Williams v. Life Sav. & Loan*, 802 F.2d 1200, 1202 (10th Cir. 1986); *Durfee v. Duke*, 375 U.S. 106, 110 (1963)); *see also Puc-Ruiz v. Holder*, 629 F.3d 771, 782 (8th Cir. 2010) ("When the [immigration judge] lacks jurisdiction, his decisions are nullities.").

The government argues that that the Defendant cannot attack the Removal Order unless he satisfies 8 USC § 1326(d), which provides that an alien "may not challenge the validity of the deportation order" unless he demonstrates that 1) he "exhausted any administrative remedies that may have been available to seek relief against the order;" (2) "the deportation proceedings at which the order was issued improperly deprived the alien of the opportunity for judicial review;" and (3) "the entry of the order was fundamentally unfair." The government argues that because Defendant waived his right to appeal, he cannot, as a matter of law, satisfy these requirements. But the government's argument ignores two key principles that are engrained in holdings of both the Supreme Court and the Tenth Circuit—that a void order is always open to collateral attack and that a party cannot waive a challenge to an absence of subject matter jurisdiction.

First, a void order is always open to collateral attack. *See United States v. Thompson*, 941 F.2d 1074, 1080 (10th Cir. 1991) (recognizing that "void judgments are subject to collateral attack"); *see also Bigford*, 365 F.3d 859 at 864–65 (recognizing that a judgment may be attacked in a collateral proceeding "on the basis that it was rendered without jurisdiction" (citations

10

omitted)). This is because "if a judgment is void, it is a nullity from the outset." *V.T.A., Inc. v. Airco, Inc.*, 597 F.2d 220, 224 n. 9 (10th Cir.1979). Because the Removal Order was void, Defendant is not required to satisfy 8 USC § 1326(d) in order to be allowed to collaterally attack it. Simply put, 8 USC § 1326(d) does not control when the order as issue was entered by a court that did not have subject matter jurisdiction over the challenger.

Second, Defendant did not waive his challenge to the immigration court's jurisdiction by failing to question the same at his removal proceeding. This is because "'subject-matter jurisdiction, because it involves a court's power to hear a case, can never be forfeited or waived.'" *United States v. Cotton,* 535 U.S. 625, 630 (2002); *see also Ins. Corp. of Ireland v. Compagnie des Bauxites de Guinee*, 456 U.S. 694, 702 (1982) (noting that "a party does not waive the requirement [that a court have subject matter jurisdiction] by failing to challenge jurisdiction early in the proceedings"). Courts "have an independent obligation to determine whether subject-matter jurisdiction exists, even in the absence of a challenge from any party." *Arbaugh v. Y&H Corp.*, 546 U.S. 500, 514 (2006). Thus, it is immaterial that Defendant failed to challenge his deficient notice to appear before the immigration court and waived his right to appeal the Removal Order. Because the immigration court did not have jurisdiction over him, the Removal Order is void, and Defendant is free to challenge that court's order at any point.

The notice to appear that was served on Defendant was not "a notice to appear under section 1229(a)." *See Pereira*, 138 S.Ct. at 2115. Thus, proceedings before the immigration court were never properly commenced, and the immigration court was not therefore vested with subject matter jurisdiction over Defendant. *See* 8 C.F.R. § 1003.14. Its Removal Order is therefore void. *Bigford*, 365 F.3d at 864–65. In order to convict Defendant of Count III, the government must prove that Defendant had been previously deported or removed and that he was

found in the United States without consent.[2] *See* 8 U.S.C. § 1326(a). Because the Removal Order is void, as a matter of law, the government is incapable of proving the first element of this charge. *See Todd*, 446 F.3d at 1068. Count III must therefore be dismissed.

## CONCLUSION

For the reasons stated above, the court **HERBY GRANTS** Defendant Carlos Zuniga-Hernandez's Motion to Dismiss Count III of the Indictment (ECF No. 21).

DATED this 17th day of May, 2019.

BY THE COURT:

Clark Waddoups
United States District Judge

---

[2] The government cites to Defendant's signed Notice of Rights in which he admitted that he was in the United States illegally and gave up his right to a hearing. (ECF No. 21-2.) Because the immigration court lacked jurisdiction, Defendant's acknowledgment must be viewed simply as a voluntary removal, which does not satisfy the requirements of 8 U.S.C. § 1326(a) and does not support Count III of the Indictment.